IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BPZ Resources, Inc., | § | Case No.: 15-60016 (DRJ) |
| | § | |
| Debtor. | § | |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF HOULIHAN
LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT
BANKER FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**

By this application (the "Application"),[1] BPZ Resources, Inc. (the "Debtor", and

collectively with its direct and indirect subsidiaries, the "Company") respectfully requests that

the Bankruptcy Court enter an order (the "Order") substantially in the form attached hereto as

Exhibit B, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United

States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), (a) authorizing

the Debtor to employ and retain Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as the

Debtor's financial advisor and investment banker, *nunc pro tunc* to the Petition Date (as defined

below), in accordance with the terms and conditions set forth in that certain engagement letter

dated as of December 3, 2014 (as amended on March 9, 2015, and as may be amended from time

to time, the "Engagement Letter") and the Engagement Amendment between the Debtor and

Houlihan Lokey (the "Engagement Amendment" and, together with the Engagement Letter, the

"Engagement Agreements"), copies of which are attached to the Order as Exhibit 1 and

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings attributed to them in the *Declaration of J. Durkin Ledgard in Support of First Day Motions* (the "Ledgard Declaration") [Docket No. 9].

Exhibit 2; (b) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Agreements; (c) permitting submission of time in half-hour rather than tenth-hour increments; and (d) granting such other and further relief as is just and proper.  In support of this Application, the Debtor submits the *Declaration of John-Paul Hanson in Support of the Application of BPZ Resources, Inc. for Entry of an Order Authorizing the Retention and Employment of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker Nunc Pro Tunc to the Petition Date* (the "Hanson Declaration"), which is attached hereto as Exhibit A, and represents as follows:

## I.  JURISDICTION AND VENUE

1.        This Bankruptcy Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought hereby are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 6003, and Local Rules 2014-1 and 2016-1.

## II.  PROCEDURAL STATUS

2.        On March 9, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court").

3.        The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in this case, and no request has been made for the appointment of a trustee or an examiner.

### III.  FACTUAL BACKGROUND

4.      The Debtor is a Texas corporation, which was incorporated in 2007, is headquartered in Houston, Texas, and maintains an office in Victoria, Texas.  Through its non-debtor subsidiaries, the Debtor also maintains offices in Lima and Tumbes, Peru and Quito, Ecuador.   Through its subsidiaries, the Debtor is primarily engaged in the exploration, development and production of oil and natural gas in Peru.  A description of the Debtor's business operations, capital structure and the events leading up to the Petition Date, as well as the facts and circumstances supporting the relief requested herein, is set forth in detail in the Ledgard Declaration, which is fully incorporated herein by reference.

### IV.  RELIEF REQUESTED

5.      By this Application, the Debtor seeks entry of an order substantially in the form filed herewith, pursuant to sections 327(a) and 328(a) of title 11 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, (a) authorizing the Debtor to employ and retain Houlihan Lokey as the Debtor's financial advisor and investment banker, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Engagement Agreements; (b) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Agreements; (c) permitting submission of time in half-hour rather than tenth-hour increments; and (d) granting such other and further relief as is just and proper.

6.      The Debtor brings this Application because of the critical importance of a financial advisor and investment banker to assist in the performance of its duties.  The Debtor believes that Houlihan Lokey is well qualified to provide advisory services and that the terms of its retention are reasonable.

## V.  HOULIHAN LOKEY'S QUALIFICATIONS

7.      The Debtor has determined, in the exercise of its business judgment, that the size of the Company's business operations  and the complexity of the financial difficulties attendant upon operations of such scope, require it to employ an investment banker and financial advisor with knowledge of the Company's industry and businesses and experience with the chapter 11 process, and to advise the Company with respect to its global restructuring.  The Debtor further believes that Houlihan Lokey is well-qualified to provide its services to the Debtor in a cost-effective, efficient and timely manner.  Houlihan Lokey will coordinate with the other retained professionals in this chapter 11 case to eliminate unnecessary duplication or overlap of work. Retaining such an advisor will enable the Debtor to carry out its duties in the chapter 11 case and to assist in the reorganization of the estate.

8.      Houlihan Lokey is well suited to provide the services that the Debtor requires. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring.  In 2013, Houlihan Lokey ranked as the No. 1 M&A advisor for U.S. transactions under $3 billion, according to Thomson Reuters.  The firm has one of the largest worldwide financial restructuring practices of any investment bank.  Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

9.      Houlihan Lokey is an internationally recognized investment banking and financial advisory firm, with eighteen offices worldwide and approximately 1,000 professionals. Houlihan Lokey's Financial Restructuring Group, which has more than 170 professionals, is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties-in-interest involved in financially troubled companies based in a variety of industries and requiring complex financial restructurings, both in and outside of

bankruptcy. Houlihan Lokey has been, and is, involved in a number of large restructuring cases in the United States, including representing debtors recently in: *In re Trump Entm't Resorts, Inc.*, Case No. 14-12103 (Bankr. D. Del. Oct. 6, 2014); *In re Northhampton Generating Co., LP*, Case No. 11-33095 (Bankr. W.D.N.C. Dec. 5, 2011); *In re AES Thames, L.L.C.*, Case No. 11-10334 (Bankr. D. Del. Feb. 1, 2011); *In re MSR Resort Golf Course LLC*, Case No. 11-10372 (Bankr. S.D.N.Y. Feb. 1, 2011); *In re Truvo USA LLC*, Case No. 10-13513 (Bankr. S.D.N.Y July 1, 2010); *In re Mark IV Indus., Inc.*, Case No. 09-12705 (Bankr. S.D.N.Y. Apr. 30, 2009); *In re Premier Inter. Holdings, Inc.*, Case No. 09-12019 (Bankr. D. Del. Jun. 13, 2009); *In re Aventine Renewable Energy Holdings, Inc.*, Case No. 09-11214 (Bankr. D. Del. Apr. 7, 2009); *In re Foamex Inter. Inc.*, Case No. 09-10560 (Bankr. D. Del. Feb. 18, 2009); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008).

10.    In addition, Houlihan Lokey has been involved in restructuring situations representing official creditors' committees including recent retentions on: *In re THQ, Inc.*, Case No. 12-13398 (Bankr. D. Del. Dec. 19, 2012); *In re Overseas Shipping Grp., Inc.*, Case No. 12-20000 (Bankr. D. Del. Nov. 14, 2012); *In re Arcapita Bank B.S.C.*, Case No. 12-11076 (Bankr. S.D.N.Y. Mar. 19, 2012); *In re Gen. Growth Props.*, Case No. 09-11977 (Bankr. S.D.N.Y Apr. 16, 2009); *In re Chemtura Corp.*, Case No. 09- 11233 (Bankr. S.D.N.Y. Mar. 18, 2009); *In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Jan. 26, 2009); *In re WCI Communities Inc.*, Case No. 08- 11643 (Bankr. D. Del. Aug. 4, 2008); *In re SemGroup LP*, Case No. 08-11525 (Bankr. D. Del. Jul. 22, 2008); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Delta Airlines, Inc.*, Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Refco, Inc.*, Case No. 05-60006 (Bankr. S.D.N.Y. Oct.

17, 2005); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July. 21, 2002); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

11.     The Debtor has selected Houlihan Lokey as its investment banker and financial advisor based upon, among other things, (a) the Debtor's need to retain an investment banking and financial advisory firm to provide advice with respect to the restructuring, and (b) Houlihan Lokey's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

## VI.  HOULIHAN LOKEY'S PREPETITION SERVICES

12.     Before the Petition Date, on December 3, 2014, the Company engaged Houlihan Lokey to provide general investment banking and financial advice in connection with the Debtor's attempts to complete a strategic restructuring, reorganization and/or recapitalization of all or a significant portion of the Debtor's outstanding indebtedness, as well as to prepare for the potential commencement of this chapter 11 case.   On March 9, 2015, the Company and Houlihan Lokey amended the terms of the engagement to include services relating to a sale transaction.

13.     In rendering prepetition services to the Company in connection with these matters, Houlihan Lokey has worked closely with the Company's management and other retained professionals and has become well-acquainted with its business operations and capital structure.   Accordingly, Houlihan Lokey has developed significant expertise regarding the Company that will assist Houlihan Lokey in providing effective and efficient services during this chapter 11 case.  Should the Bankruptcy Court approve the Debtor's retention of Houlihan Lokey as investment bankers, Houlihan Lokey will continue, without interruption, to perform the services for the Debtor as described herein.

## VII.  SERVICES TO BE PROVIDED[2]

14.     As more fully described in the Engagement Agreements, the services to be

provided by Houlihan Lokey in this chapter 11 case include the following:

> (a)     assisting the Company in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Company in the preparation of an offering memorandum;

> (b)     assisting the Company in soliciting, coordinating and/or evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

> (c)     assisting the Company with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

> (d)     providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

> (e)     attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey mutually agree; and

> (f)     providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 6 of the Engagement Agreements, or otherwise agreed upon by Houlihan Lokey and the Company.

15.     It is necessary for the Debtor's efforts to maximize the value of its assets that the

Debtor employs Houlihan Lokey to render the foregoing professional services.  The Debtor

believes that the services will not duplicate the services that other professionals will be

providing the Debtor in this case.  Specifically, Houlihan Lokey will carry out unique functions

and will use reasonable efforts to coordinate with the Debtor and other professionals retained in

this case to avoid the unnecessary duplication of services.

---

[2]     Unless otherwise defined in this section and the section titled "Professional Compensation," capitalized terms shall have the meanings ascribed to them in the Engagement Agreements.

## VIII.  PROFESSIONAL COMPENSATION

16.     Prior to the commencement of this chapter 11 case and under the terms of the Engagement Agreements, the Debtor paid Houlihan Lokey fees of $600,000, for services rendered, and for reasonable out-of-pocket expenses related thereto of $44,104.07.  As more fully described in the Engagement Agreements, in consideration of the services provided by Houlihan Lokey, the Company has agreed to pay Houlihan Lokey during this chapter 11 case:

(a)     Initial Fee: In addition to the other fees provided for herein, upon the execution of the Engagement Agreements, the Company shall pay Houlihan Lokey a nonrefundable cash fee of $150,000, which shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement ("Initial Fee");

(b)     Monthly Fees:  In addition to the other fees provided for herein, upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of the Engagement Agreements, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $150,000 ("Monthly Fee").  Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein;

(c)     Crediting:  Starting with the sixth (6th) Monthly Fee paid under the Engagement Agreements, fifty percent (50%) of all the Monthly Fees previously paid on a timely basis to Houlihan Lokey shall be credited against the next Transaction Fee to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fee be reduced below zero;

(d)     Restructuring Transaction Fee: Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction, the consummation of such Restructuring Transaction and the effectiveness of all necessary waivers, consents, amendments or restructuring agreements between any entity comprising the Company and the Company's creditors; and (II) in the case of an in-court Restructuring Transaction, the date of confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn, and the Company shall promptly pay to

Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $1,750,000; and

(e)     Financing Transaction Fee: Upon the closing of each Financing Transaction, other than a debtor-in-possession financing, as described below, Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (I) 2.0% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company; (II) 2.5% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) 5.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed. Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of the Engagement Agreements. It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent (or other issuer of the Securities in such Financing Transaction) or directly by the Company. Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of Securities issued in exchange for such consideration multiplied by (in the case of debt securities) the face value of each such Security or (in the case of equity securities) the price per Security paid in the then current round of financing. The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any investor or other purchaser of Securities to secure its financing commitment.

In the event that any new money proceeds from the Financing Transaction are provided entirely by existing holders of the 6.5%

Convertible Notes due 2015 (the "6.5% Notes") and/or 8.5% Convertible Notes due 2017 (the "8.5% Notes"), or any direct fund affiliate thereof, then Houlihan Lokey shall earn and be paid either (a) the Restructuring Transaction Fee (to the extent a Restructuring Transaction Fee is otherwise earned and payable in accordance with this Agreement) or the Sale Transaction Fee (to the extent a Sale Transaction Fee is otherwise earned and payable in accordance with this Agreement) or (b) the Financing Transaction Fee, whichever is higher, but not both, except in the event that the Financing Transaction constitutes a debtor-in-possession financing, as described in Section 3(iv)(b).  In the event that any new money proceeds from the Financing Transaction are provided by any third party(s) not currently invested in either the 6.5% Notes or the 8.5% Notes, then Houlihan Lokey shall earn and be paid both (a) the Restructuring Transaction Fee (to the extent a Restructuring Transaction Fee is otherwise earned and payable in accordance with this Agreement) or the Sale Transaction Fee (to the extent a Sale Transaction Fee is otherwise earned and payable in accordance with this Agreement) and (b) the Financing Transaction Fee.  Notwithstanding anything to the contrary contained in the Engagement Agreements, Houlihan Lokey shall not be entitled to both a Restructuring Transaction Fee and a Sale Transaction Fee.

If the Company closes a Financing Transaction that is a debtor-in-possession financing, Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, a Financing Transaction Fee equal to (I) if 50% or more of the amount of the debtor-in-possession financing is provided for by parties who are, at the time of the commitment of the debtor-in-possession financing, holders of the 6.5% Notes and/or the 8.5% Notes (or any direct fund affiliate thereof), 1.0% of the gross proceeds of such debtor-in-possession financing; or (II) if more than 50% of the amount of the debtor-in-possession financing is provided for by any third party or parties who are, at the time of the commitment of the debtor-in-possession financing, not holders of the 6.5% Notes and/or the 8.5% Notes (or any direct fund affiliate thereof), 2.0% of the gross proceeds of such debtor-in-possession financing.

Notwithstanding anything to the contrary contained herein, to the extent a Financing Transaction incorporates the conversion or exchange, in whole or in part, of the 6.5% Notes and/or the 8.5% Notes into new indebtedness or equity (whether in court or out of court), in conjunction with new money raised or committed, then the Financing Transaction Fee shall only be earned and payable on the new money portion of any such financing.

(f)     Sale Transaction Fee.   Upon the closing of a Sale Transaction, Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") equal to $1,750,000.00.

17.     In addition to all of the other fees and expenses described in the Engagement Agreements, the Company shall, upon Houlihan Lokey's request and in accordance with applicable orders of the Bankruptcy Court, reimburse Houlihan Lokey for its reasonable out of-pocket expenses incurred from time to time in connection with its services hereunder.  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

18.     The Company also requests that, subject to application to this Bankruptcy Court, Houlihan Lokey be reimbursed by the Company for the fees and expenses, in no event greater than $25,000 without the Company's prior approval, of Houlihan Lokey's legal counsel arising out of or incurred in connection with the negotiation and performance of the Engagement Agreements and the matters contemplated hereby.

19.     The Debtor believes that the compensation structure described above is (i) comparable to compensation generally charged by investment banking firms of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and (ii) reflects a typical fee structure for Houlihan Lokey and other leading

investment banking firms which do not bill their clients on an hourly basis, but are generally compensated on a transactional basis.

20.     The hours worked, the results achieved and the ultimate benefit to the Debtor of the work performed by Houlihan Lokey in connection with this engagement may vary and the Debtor has taken this into account in setting the above fees.

21.     Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing skills, knowledge and experience within the oil and gas industry, and mergers and acquisitions capabilities, some or all of which may be required by the Debtor during the term of Houlihan Lokey's engagement hereunder, were important factors to the Debtor in determining the amount of Houlihan Lokey's fees, and the Debtor believes that the ultimate benefit to the Debtor of Houlihan Lokey's services hereunder cannot be measured merely by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of such services.

22.     The Debtor proposes that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code and will not be subject to the standard of review in section 330 of the Bankruptcy Code.

## IX.  MODIFICATION OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

23.     Consistent with its ordinary practice and the practice of investment bankers and financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour increments records (similar to those customarily kept by attorneys and required by the *General Order in the Matter of Procedures for Complex Chapter 11 Cases* (the "Uniform Complex Rules")) or provide or conform to a schedule of hourly rates for its professionals.

Accordingly, Houlihan Lokey requests that it be excused from such information requirements. Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Debtor, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Bankruptcy Court.  In addition, Houlihan Lokey will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this case.

## X.  HOULIHAN LOKEY'S DISINTERESTEDNESS

24.     To the best of the Debtor's knowledge, (a) Houlihan Lokey is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtor and its estate, and (b) except as disclosed in the Hanson Declaration, has no connection to the Debtor or to its significant creditors or certain other potential parties-in-interest ("Parties-In-Interest") whose names were supplied to Houlihan Lokey by the Debtor.[3]

25.     Also, to the best of the Debtor's knowledge, information and belief, and based entirely and in reliance upon the Hanson Declaration:  (i) to the best of John-Paul Hanson's knowledge, information and belief, none of Houlihan Lokey's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtor, creditors, or equity security holders in this case and, as such the Debtor believes that Houlihan Lokey is disinterested and holds no materially adverse interest as to the matters upon which

---

[3]  The list of Parties-In-Interest supplied to Houlihan Lokey by the Debtor is attached as Schedule A to the Hanson Declaration.

they are to be retained; and (ii) to the extent Houlihan Lokey discovers any facts bearing on the matters described herein during the period of Houlihan Lokey's retention, they will supplement the information contained in the Hanson Declaration.

26.     As described in more detail in the Hanson Declaration, Houlihan Lokey, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtor's creditors or other Parties-In-Interest in these proceedings, and/or matters wholly unrelated to those proceedings.  Due to the size of Houlihan Lokey and the number of creditors and other parties in interest involved in this case, however, Houlihan Lokey may have represented certain of the Debtor's creditors or other Parties-In-Interest in matters wholly unrelated to this chapter 11 case.  Except as may be described in the Hanson Declaration, Houlihan Lokey does not, to its knowledge, represent any party with an interest materially adverse to the Debtor or its estate.

27.     Also, in accordance with section 504 of the Bankruptcy Code, Houlihan Lokey has informed the Debtor that there is no agreement or understanding between Houlihan Lokey and any other entity, other than an employee of Houlihan Lokey, for the sharing of compensation received or to be received for services rendered in connection with this chapter 11 case.

## XI.  INDEMNIFICATION OF HOULIHAN LOKEY

28.     Pursuant to the Engagement Agreements, the Debtor has agreed to (i) indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each, an "Indemnified Party" and collectively, the "Indemnified Parties") to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or

related to the Engagement Agreements, Houlihan Lokey's engagement under the Engagement

Agreements, any Transaction (as such term is defined in the Engagement Agreement) or

proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or

the Debtor in connection with the Engagement Agreements, and (ii) to reimburse each

Indemnified Party for all reasonable expenses (including, without limitation, the fees and

expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing,

defending, settling, compromising or otherwise becoming involved in any action, suit, dispute,

inquiry, investigation or proceeding, pending or threatened, brought by or against any person or

entity (including, without limitation, any shareholder or derivative action), arising out of or

relating to the Engagement Agreements, or such engagement, Transaction or actions.

29.     However, notwithstanding anything to the contrary in the Engagement

Agreements or any agreements incorporated by reference in the Engagement Agreements, the

Debtor's agreement to indemnify and hold Houlihan Lokey harmless is modified as follows:

>   (a)     Any request of an Indemnified Party for payment of indemnity, contribution, or otherwise pursuant to the Engagement Agreements shall be subject to the approval of, and review by, the Bankruptcy Court for reasonableness; *provided*, *however*, that in no event shall an Indemnified Party be indemnified or receive contribution to the extent that any claim or expense has been finally determined by a court of competent jurisdiction to have resulted from gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing on the part of that Indemnified Party.

>   (b)     In the event Houlihan Lokey or an Indemnified Party seeks reimbursement of its attorneys' fees from the Debtor pursuant to the Engagement Agreements, such fees shall be subject to the approval of the Bankruptcy Court as being reasonable.

>   (c)     Until the date that this chapter 11 case is closed, Houlihan Lokey must file an application in this Bankruptcy Court for any amounts it believes it is entitled to under the Engagement Agreements, and the Debtor may not pay any such amounts to Houlihan Lokey before the entry of an order by this Bankruptcy Court approving such payment. This subparagraph is intended only to specify the

period of time under which the Bankruptcy Court shall have exclusive jurisdiction over any request for fees and expenses by Houlihan Lokey, and for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Houlihan Lokey.

30.    Notwithstanding any provisions in the Engagement Agreements to the contrary, the contribution obligations of the Indemnified Parties shall not be limited to the aggregate amount of fees actually received by Houlihan Lokey from the Debtor pursuant to the Engagement Agreements, the Order or subsequent orders of this Bankruptcy Court.

## XII.   RETENTION PURSUANT TO BANKRUPTCY CODE SECTION 328(a)

31.    The Debtor is seeking to retain Houlihan Lokey pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits this Bankruptcy Court to approve the terms of Houlihan Lokey's engagement as set forth in the Engagement Agreements.

32.    The Debtor submits that the fee structure, expense reimbursements and indemnification provisions are reasonable terms and conditions of employment under section 328(a) of the Bankruptcy Code in light of the following:  (a) the nature and scope of services to be provided by Houlihan Lokey; (b) industry practice with respect to the fee structures and indemnification provisions typically utilized by leading investment banks and investment bankers that do not bill their clients on an hourly basis; (c) market rates charged for comparable services both in and out of the chapter 11 context; (d) Houlihan Lokey's substantial experience with respect to financial restructuring and investment banking; and (e) the nature and scope of work already performed by Houlihan Lokey prior to the Petition Date.

33.     The terms of the Engagement Agreements were negotiated in good faith and at arm's-length between the Debtor and Houlihan Lokey and reflect the Debtor's evaluation of the extensive work that has been and will be performed by Houlihan Lokey and its financial advisory expertise.  The Debtor acknowledges and agrees that the fee structure was agreed upon by the parties in anticipation of a substantial professional commitment of time and effort by Houlihan Lokey and its professional staff under the Engagement Agreements, and in light of the fact that such commitment may foreclose other opportunities for Houlihan Lokey and its professional staff and that the actual time and commitment required of Houlihan Lokey and its professional staff to perform the services under the Engagement Agreements may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

34.     Furthermore, the fee structure is consistent with and typical of compensation arrangements entered into by Houlihan Lokey and other comparable firms in connection with the rendering of similar services under similar circumstances.  Houlihan Lokey's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of Houlihan Lokey's engagement, were all important factors in determining the fee structure.  The Debtor believes that the ultimate benefit of Houlihan Lokey's services cannot be measured by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of such services.  Accordingly, the Debtor submits that the fee structure is both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

35.     The Debtor proposes that, notwithstanding Houlihan Lokey's retention under section 328(a), the U.S. Trustee will retain the right to object to the compensation to be paid to

Houlihan Lokey pursuant to the Engagement Agreements based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of this case.

36.     As set forth above, notwithstanding approval of the Engagement Agreements under section 328(a) of the Bankruptcy Code, Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this case, subject to the Bankruptcy Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Bankruptcy Court and consistent with the fee structure set forth in the Engagement Agreements.

## XIII.  NOTICE

37.     Notice of this Motion has been provided in accordance with the *Order Establishing Notice Procedures* [Docket No. 28].    The Debtor submits that, under the circumstances, no other or further notice is necessary.

## XIV.NO PRIOR REQUEST

38.     No prior application for the relief request herein has been made to this or any other court.

WHEREFORE the Debtor respectfully requests that the Bankruptcy Court enter an order (i) authorizing the Debtor to employ and retain Houlihan Lokey as its financial advisor and investment banker pursuant to the terms of the Engagement Agreements, effective as of the Petition Date, and (ii) granting the Debtor such other and further relief as is just and proper.

Dated:  March 10, 2015

                                       BPZ RESOURCES, INC.

                                       /s/ J. Durkin Ledgard
                                       Name: J. Durkin Ledgard
                                       Title:   Chief Legal, Commercial and
                                       Administrative Officer