IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BPZ Resources, Inc., | § | Case No.: 15-60016 (DRJ) |
| | § | |
| Debtor. | § | |

### APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF OPPORTUNE LLP AS FINANCIAL AND RESTRUCTURING ADVISOR FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE

By this application (the "Application"),[1] BPZ Resources, Inc. (the "Debtor") respectfully requests that the Bankruptcy Court enter an order (the "Order") substantially in the form attached hereto as Exhibit C, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), (a) authorizing the Debtor to employ and retain Opportune LLP ("Opportune") as the Debtor's financial and restructuring advisor, *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions set forth in that certain Engagement Agreement, dated as of March 17, 2015 (as may be amended from time to time, the "Engagement Agreement"),[2] a copy of which is attached hereto as Exhibit B; (b) approving the terms of Opportune's employment and retention, including the fee and expense structure and the indemnification and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings attributed to them in the *Declaration of J. Durkin Ledgard in Support of First Day Motions* (the "Ledgard Declaration") [Docket No. 9].

[2] The Engagement Agreement supersedes the prepetition Engagement Agreement, dated as of January 20, 2015, between Opportune and BPZ Resources, Inc. (the "Prior Engagement Agreement"), in which BPZ Resources, Inc. engaged Opportune to serve as financial advisor with respect to a restructuring and potential filing under chapter 11.

related provisions set forth in the Engagement Agreement; (c) permitting submission of time in half-hour rather than tenth-hour increments; and (d) granting such other and further relief as is just and proper.  In support of this Application, the Debtor submits the *Declaration of David Baggett in Support of the Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Opportune LLP as Financial and Restructuring Advisor for the Debtor Nunc Pro Tunc to the Petition Date* (the "Baggett Declaration"), which is attached hereto as Exhibit A, and represents as follows:

### I.     JURISDICTION AND VENUE

1. This Bankruptcy Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought hereby are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

### II.     PROCEDURAL STATUS

2. On March 9, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court").

3. The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in this case, and no request has been made for the appointment of a trustee or an examiner.

### III.     FACTUAL BACKGROUND

4. The Debtor is a Texas corporation, which was incorporated in 2007, is headquartered in Houston, Texas, and maintains an office in Victoria, Texas.  Through its non-

debtor subsidiaries, the Debtor also maintains offices in Lima and Tumbes, Peru and Quito, Ecuador. Through its subsidiaries, the Debtor is primarily engaged in the exploration, development and production of oil and natural gas in Peru. A description of the Debtor's business operations, capital structure and the events leading up to the Petition Date, as well as the facts and circumstances supporting the relief requested herein, is set forth in detail in the Ledgard Declaration, which is fully incorporated herein by reference.

### IV.   RELIEF REQUESTED

5.   By this Application, the Debtor seeks entry of an order substantially in the form filed herewith, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, (a) authorizing the Debtor to employ and retain Opportune as the Debtor's financial and restructuring advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Engagement Agreement; (b) approving the terms of Opportune's employment and retention, including the fee and expense structure and the indemnification and related provisions set forth in the Engagement Agreement; (c) permitting submission of time in half-hour rather than tenth-hour increments; and (d) granting such other and further relief as is just and proper.

6.   The Debtor brings this Application because of the critical importance of a financial and restructuring advisor to assist in the performance of its duties. The Debtor believes that Opportune is well qualified to provide advisory services and that the terms of its retention are reasonable.

### V.   OPPORTUNE'S QUALIFICATIONS

7.   In consideration of the size and complexity of its business, as well as the exigencies of the circumstances, the Debtor has determined that the services of an experienced financial and restructuring advisor are necessary to assist the Debtor in its reorganization efforts

and, crucially, will substantially enhance the Debtor's attempts to maximize the value of its estate for all parties in interest. The Debtor believes that Opportune is well qualified to provide interim financial and restructuring advisory services in light of its extensive knowledge of the Debtor's industry, as well as its expertise with respect to chapter 11 proceedings.

8. Opportune specializes in turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. Specifically, Opportune has developed particular expertise in the onshore and offshore oil and gas exploration and drilling industries and geographies in which the Debtor operates, and has an intimate understanding of the economic, regulatory, operational, strategic and financial factors that drive the oil and gas business. Opportune's services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. To the best of the Debtor's knowledge, information and belief, in the past, Opportune has provided interim management, restructuring advisory services and/or strategic advice to companies of similar size to the Debtor, creditors, investors and other parties in interest, including: (i) the chapter 11 cases of each of Global Geophysical Services, ATP Oil & Gas Corporation, GMX Resources Inc., Cano Petroleum Inc., Crusader Energy Group, Inc. and Edge Petroleum Corporation; and (ii) matters involving each of Union Bank, Wells Fargo Bank, N.A., GSO Capital Partners, Third Avenue Management, Royal Bank of Canada, Bank of Scotland, Aurora Oil & Gas Corporation, and others.

9. Accordingly, the Debtor has selected Opportune as its financial and restructuring advisor based upon, among other things, (a) the Debtor's need to retain a financial and restructuring advisory firm, and (b) Opportune's extensive experience and excellent reputation in providing financial and restructuring advisory services in complex chapter 11 cases.

## VI.     OPPORTUNE'S PREPETITION SERVICES

10. In rendering prepetition services to the Debtor in connection with a potential filing under chapter 11 and other matters, Opportune has become familiar with the Debtor's business, financial affairs, and capital structure.  Therefore, Opportune is ideally positioned to assist the Debtor's management with various issues that may arise in this chapter 11 case.

11. Pursuant to the Prior Engagement Agreement, the Opportune professionals providing services to the Debtor (the "Opportune Professionals") have worked closely with the Debtor's management and other professionals in evaluating operations and assisting with the myriad requirements of this chapter 11 case.  Through this representation, Opportune has become intimately familiar with the Debtor's cash flow projections, 13-week budget and other financial and accounting needs.  As a result, the Debtor believes that Opportune has developed significant relevant experience and expertise regarding the Debtor and the unique circumstances of this case.

## VII.    SERVICES TO BE PROVIDED[3]

12. The Engagement Agreement is intended to govern the terms and conditions upon which the Debtor will retain and compensate Opportune, except to the extent, if any, as explicitly set forth herein or in any order granting the relief requested by this Application.  The terms and conditions of the Engagement Agreement were negotiated between the Debtor and Opportune

---

[3] Unless otherwise defined in this section and the section titled "Professional Compensation," capitalized terms shall have the meanings ascribed to them in the Engagement Agreement.

5

and reflect the parties' mutual agreement as to the substantial efforts that will be required in such engagement.

13. Subject to approval of the Bankruptcy Court, Opportune will provide the following financial advisory and/or restructuring Services as requested and directed by the Debtor's senior management and/or Board of Directors (and in coordination with the Debtor's other counsel and advisors) to provide such financial advisory and/or restructuring support Services as Opportune and the Debtor deem appropriate and feasible in the course of any negotiated restructuring or chapter 11 matters, including, but not limited to:

(a) assist the Company with respect to a potential restructuring of the Company through an out of court transaction and/or under the U.S. Bankruptcy Code ("Chapter 11 Case") and/or similar proceedings in jurisdictions outside the United States;

(b) assist the Company and its legal counsel and investment banker(s) in the arrangement of any debtor-in-possession financing (the "DIP Financing"), understanding that Opportune is not a licensed broker-dealer and that the scope of Opportune's work in this regard would be to support capital raising efforts provided by the Company's investment banker;

(c) assist the Company and its legal counsel with providing information and analyses required pursuant to any such DIP Financing;

(d) assist the Company in contingency planning, including the compilation and preparation of certain documents and disclosures required by the Bankruptcy Court in connection with such filing, including but not limited to "first day" and other pleadings, Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs, DIP budgets and cash flow forecasts;

(e) assist the Company in the preparation of ongoing documents and disclosures required by the Bankruptcy Court subsequent to the chapter 11 bankruptcy filing, including, but not limited to, Monthly Operating Reports, compliance reporting, periodic budgets, and other disclosure documents required by the Bankruptcy Court or the Company's stakeholders from time to time;

(f) assist the Company with the identification and implementation of short-term cash management procedures;

(g)     assist the Company with any and all reorganization efforts, including, but not limited, to the identification of executory contracts for affirmation and/or rejection, cost structure rationalization, and operational assessments;

(h)     assist the Company with the preparation of financial and other information for distribution to stakeholders and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Bankruptcy Court or creditor approval is sought;

(i)     as requested and necessary, attend all meetings with the Company and potential investors, banks, and other secured lenders, any official committee(s) appointed in the Chapter 11 Case, the United States Trustee, other parties-in-interest and professionals hired by the same;

(j)     prepare the necessary analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(k)     assist the Company and its legal counsel in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in the Chapter 11 Case, including information contained in the Disclosure Statement and Plan of Reorganization;

(l)     assist the Company and its legal counsel in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers, as appropriate;

(m)     assist the Company and its legal counsel in the analysis and/or preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in the Chapter 11 Case, including the development of the related tax consequences contained in the Disclosure Statement;

(n)     provide litigation support and advisory services with respect to accounting and tax matters, along with expert witness testimony on case related issues as required by the Company; and

(o)     provide such other general business consulting or such other assistance as the Company's management or its legal counsel may deem necessary and consistent with the role of a financial and/or restructuring advisor to the extent that it would not be duplicative of services provided by other professionals.

14. In particular, Opportune will assist the Debtor with the various financial reporting requirements associated with the Chapter 11 Case, including Monthly Operating Reports, Schedules of Assets and Liabilities and Statements of Financial Affairs, and other reporting requirements.

15. Moreover, the Debtor believes that the services to be provided by Opportune will not be duplicative of any services that the Debtor's other professionals in this case may provide, including any services provided by the Debtor's proposed financial advisor and investment banker, Houlihan Lokey Capital, Inc.

16. For these reasons, Opportune is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of the Debtor's chapter 11 efforts. Indeed, the Debtor believes that without Opportune's continued service, the Debtor would face immediate and irreparable harm. Therefore, the Debtor submits that the retention of Opportune on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtor's estate, creditors, and other parties-in-interest, and should be granted in all respects.

### VIII.    PROFESSIONAL COMPENSATION

17. Prior to the Petition Date, and pursuant to the Prior Engagement Agreement, Opportune received $50,000 as a retainer (the "Retainer") in connection with rendering the services described in the Prior Engagement Agreement, including preparing for and filing this chapter 11 case. Opportune shall retain the Retainer in satisfaction of and subject to the terms of the Engagement Agreement. Under the terms of the Prior Engagement Agreement, the Debtor paid Opportune fees of $708,615.00, for services rendered, and for reasonable out-of-pocket expenses related thereto of $8,531.12.

18. As more fully described in the Engagement Agreement, in consideration of the services provided by Opportune, the Debtor has agreed to pay Opportune during this case a fixed monthly fee of: (i) $150,000 for March (prorated from March 17, 2015) and April 2015; (ii) $125,000 for May and June 2015; and (iii) $100,000 thereafter.

19. Additionally, from the Petition Date to March 16, 2015 (the "<u>Hourly Rate Period</u>"), Opportune will be compensated based on the hourly billing rates for the Opportune Professionals, based on the position held by such professionals, ranging from $280 to $695 per hour.[4]

20. In addition to all of the other fees and expenses described in the Engagement Agreement, Opportune will be reimbursed for the reasonable and documented out-of-pocket expenses of the Opportune Professionals incurred in connection with this assignment, such as parking, travel, courier, overtime meals, copying and postage. All fees and expenses due to Opportune will be billed in accordance with any interim professional compensation orders entered by this Bankruptcy Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, local rules of this Bankruptcy Court and applicable guidelines and requirements of the Office of the United States Trustee (the "<u>United States Trustee</u>").

21. The Debtor understands that Opportune intends to apply to the Bankruptcy Court for allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Bankruptcy Court, and guidelines established by the United States Trustee.

22. Given the numerous issues that Opportune may be required to address in the performance of its services, Opportune's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for

---

[4] The aggregate fees for the Hourly Rate Period are no more than $50,000.

9

engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

23.  Accordingly, the Debtor proposes that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code and will not be subject to the standard of review in section 330 of the Bankruptcy Code, except as set forth herein.

### IX. MODIFICATION OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

24.  Consistent with its ordinary practice and the practice of financial and restructuring advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Opportune does not ordinarily maintain contemporaneous time records in one-tenth hour increments records (similar to those customarily kept by attorneys and required by the *General Order in the Matter of Procedures for Complex Chapter 11 Cases* (the "Uniform Complex Rules")) or provide or conform to a schedule of hourly rates for its professionals.

25.  Accordingly, Opportune requests that it be excused from such information requirements. Opportune will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Debtor, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Bankruptcy Court. In addition, Opportune will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this case.

### X. OPPORTUNE'S DISINTERESTEDNESS

26.  To the best of the Debtor's knowledge, (a) Opportune is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section

engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

23.  Accordingly, the Debtor proposes that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code and will not be subject to the standard of review in section 330 of the Bankruptcy Code, except as set forth herein.

### IX. MODIFICATION OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

24.  Consistent with its ordinary practice and the practice of financial and restructuring advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Opportune does not ordinarily maintain contemporaneous time records in one-tenth hour increments records (similar to those customarily kept by attorneys and required by the *General Order in the Matter of Procedures for Complex Chapter 11 Cases* (the "Uniform Complex Rules")) or provide or conform to a schedule of hourly rates for its professionals.

25.  Accordingly, Opportune requests that it be excused from such information requirements. Opportune will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Debtor, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Bankruptcy Court. In addition, Opportune will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this case.

### X. OPPORTUNE'S DISINTERESTEDNESS

26.  To the best of the Debtor's knowledge, (a) Opportune is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section

1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtor and its estate, and (b) except as disclosed in the Baggett Declaration, Opportune has no connection to the Debtor or to its significant creditors or certain other potential parties-in-interest ("Parties-In-Interest") whose names were supplied to Opportune by the Debtor.[5]

27.     Also, to the best of the Debtor's knowledge, information and belief, and based entirely and in reliance upon the Baggett Declaration, (a) to the best of Mr. Baggett's knowledge, information and belief, none of Opportune's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtor, creditors, or equity security holders in this case and, as such the Debtor believes that Opportune is disinterested and holds no materially adverse interest as to the matters upon which it is to be retained; and (b) to the extent Opportune discovers any facts bearing on the matters described herein during the period of Opportune's retention, it will supplement the information contained in the Baggett Declaration.

28.     As described in more detail in the Baggett Declaration, Opportune, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtor's creditors or other Parties-In-Interest in these proceedings, and/or matters wholly unrelated to those proceedings.  Due to the size of Opportune and the number of creditors and other parties in interest involved in this case, however, Opportune may have represented certain of the Debtor's creditors or other Parties-In-Interest in matters wholly unrelated to this chapter 11 case.  Except as may be described in the Baggett Declaration,

---

[5] The list of Parties-In-Interest supplied to Opportune by the Debtor is attached as <u>Schedule 1</u> to the Baggett Declaration.

Opportune does not, to its knowledge, represent any party with an interest materially adverse to the Debtor or its estate.

29. Also, in accordance with section 504 of the Bankruptcy Code, Opportune has informed the Debtor that there is no agreement or understanding between Opportune and any other entity, other than an employee of Opportune, for the sharing of compensation received or to be received for services rendered in connection with this chapter 11 case.

## XI. INDEMNIFICATION OF OPPORTUNE

30. Pursuant to the Engagement Agreement, the Debtor has agreed to indemnify Opportune, and its (as applicable) partners, employees, managers, principals, agents, affiliates, independent contractors, insurers (collectively, the "Indemnified Persons" and each, an "Indemnified Person") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the engagement between Opportune and the Debtor or the Engagement Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses). The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, willful misconduct or fraudulent acts of Opportune.

31. However, notwithstanding anything to the contrary in the Engagement Agreement or any agreements incorporated by reference in the Engagement Agreement, the Debtor's agreement to indemnify and hold Opportune harmless is modified as follows:

    (a) Any request of an Indemnified Party for payment of indemnity, contribution, or otherwise pursuant to the Engagement Agreement shall be subject to the approval of, and review by, the Bankruptcy Court for reasonableness; *provided*, *however*, that in no event shall an Indemnified Party be indemnified or receive contribution to the extent that any claim or

          expense has been finally determined by a court of competent jurisdiction to have resulted from gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing on the part of that Indemnified Party.

(b)     In the event Opportune or an Indemnified Party seeks reimbursement of its attorneys' fees from the Debtor pursuant to the Engagement Agreement, such fees shall be subject to the approval of the Bankruptcy Court as being reasonable.

(c)     Until the date that this chapter 11 case is closed, Opportune must file an application in this Bankruptcy Court for any amounts it believes it is entitled to under the Engagement Agreement, and the Debtor may not pay any such amounts to Opportune before the entry of an order by this Bankruptcy Court approving such payment. This subparagraph is intended only to specify the period of time under which the Bankruptcy Court shall have exclusive jurisdiction over any request for fees and expenses by Opportune, and for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Opportune.

32.     Notwithstanding any provisions in the Engagement Agreement to the contrary, the contribution obligations of the Indemnified Parties shall not be limited to the aggregate amount of fees actually received by Opportune from the Debtor pursuant to the Engagement Agreement, the Order or subsequent orders of this Bankruptcy Court.

## XII.    APPLICABLE AUTHORITY

33.     The Debtor is seeking to retain Opportune pursuant to under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers a debtor in possession, with the Bankruptcy Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor-in-possession in carrying out its duties under the Bankruptcy Code 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a)     is not a creditor, an equity security holder, or an insider;

  (b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

  (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). For the reasons set forth in the Baggett Declaration, the exhibits thereto and as otherwise addressed herein, the Debtor believes that Opportune is a disinterested person within the meaning of section 101(14) of the Bankruptcy Code.

  34. Additionally, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11. U.S.C. § 1107(b). Opportune's prepetition relationship with the Debtor therefore does not preclude Opportune's retention as the Debtor's postpetition financial advisors.

  35. Furthermore, section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits this Bankruptcy Court to approve the terms of Opportune's engagement as set forth in the Engagement Agreement.

  36. The Debtor submits that the fee structure, expense reimbursements and indemnification provisions are reasonable terms and conditions of employment under section 328(a) of the Bankruptcy Code in light of the following: (a) the nature and scope of services to be provided by Opportune; (b) industry practice with respect to the fee structures and indemnification provisions typically utilized by financial and restructuring advisory firms that

do not bill their clients on an hourly basis; (c) market rates charged for comparable services both in and out of the chapter 11 context; (d) Opportune's substantial experience with respect to providing financial and restructuring advisory services, particularly in the oil and gas industries; and (e) the nature and scope of work already performed by Opportune prior to the Petition Date.

37. The terms of the Engagement Agreement were negotiated in good faith and at arm's-length between the Debtor and Opportune and reflect the Debtor's evaluation of the extensive work that has been and will be performed by Opportune and its financial and restructuring advisory expertise. The Debtor acknowledges and agrees that the fee structure was agreed upon by the parties in anticipation of a substantial professional commitment of time and effort by Opportune and its professional staff under the Engagement Agreement, and in light of the fact that such commitment may foreclose other opportunities for Opportune and its professional staff and that the actual time and commitment required of Opportune and its professional staff to perform the services under the Engagement Agreement may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

38. Furthermore, the fee structure is consistent with and typical of compensation arrangements entered into by Opportune and other comparable firms in connection with the rendering of similar services under similar circumstances. Opportune's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of Opportune's engagement, were all important factors in determining the fee structure. The Debtor believes that the ultimate benefit of Opportune's services cannot be measured by reference to the number of hours to be expended by Opportune's professionals in

the performance of such services. Accordingly, the Debtor submits that the fee structure is both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

39. The Debtor proposes that, notwithstanding Opportune's retention under section 328(a), the United States Trustee will retain the right to object to the compensation to be paid to Opportune pursuant to the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, *provided* that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other financial and restructuring advisory firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of this case.

40. Furthermore, as set forth above, notwithstanding approval of the Engagement Agreement under section 328(a) of the Bankruptcy Code, Opportune intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this case, subject to the Bankruptcy Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Bankruptcy Court and consistent with the fee structure set forth in the Engagement Agreement.

41. The retention of Opportune as the Debtor's financial and restructuring advisor is a sound exercise of the Debtor's business judgment. The Debtor believes that the Opportune Professionals will provide valuable and crucial services that benefit the Debtor's estate and creditors. Therefore, the Debtor submits that retention of Opportune is appropriate and in the best interests of the Debtor, its estate and all parties in interest in this chapter 11 case.

## XIII. NOTICE

42. Notice of this Motion has been provided in accordance with the *Order Establishing Notice Procedures* [Docket No. 28]. The Debtor submits that, under the circumstances, no other or further notice is necessary.

## XIV. NO PRIOR REQUEST

43. No prior application for the relief request herein has been made to this or any other court.

WHEREFORE the Debtor respectfully requests that the Bankruptcy Court enter an order (a) authorizing the Debtor to employ and retain Opportune as its financial and restructuring advisor pursuant to the terms of the Engagement Agreement, effective *nunc pro tunc* to the Petition Date, (b) approving the terms of Opportune's employment and retention, including the fee and expense structure and the indemnification and related provisions set forth in the Engagement Agreement, (c) permitting submission of time in half-hour rather than tenth-hour increments, and (d) granting the Debtor such other and further relief as is just and proper.

Dated: March 25, 2015

BPZ RESOURCES, INC.

/s/ J. Durkin Ledgard
Name: J. Durkin Ledgard
Title: Chief Legal, Commercial and Administrative Officer